13-3519-pr
*Smith v. Artus*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand fifteen.

PRESENT:

        GUIDO CALABRESI,
        PETER W. HALL,
        SUSAN L. CARNEY,
                *Circuit Judges.*

_____

AUREL SMITH,

           *Petitioner-Appellant,*

           v.                                    13-3519-pr

DALE ARTUS, Superintendent, Clinton
Correctional Facility

           *Respondent-Appellee.*[*]

_____

**FOR PETITIONER-APPELLANT:**        JANE S. MEYERS, Brooklyn, NY.

**FOR RESPONDENT-APPELLEE:**        JOHN J. CARMODY, Assistant District
                                  Attorney (Steven A. Bender, Assistant
                                  District Attorney, *on the brief*), *for* Janet

---

[*] The Clerk of Court is respectfully directed to amend the official caption to conform with the above.

DiFiore, District Attorney of Westchester County, White Plains, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Owen, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Petitioner-Appellant Aurel Smith appeals from a judgment of the District Court entered August 1, 2013, denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Smith contends that the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), unreasonably applied clearly established United States Supreme Court law when it concluded that the New York trial court's failure to instruct his jury on the defense of justification did not violate his due process rights. We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision.

In 2002, Smith was convicted following a jury trial on two counts of first-degree assault (depraved indifference), *see* N.Y. Penal Law § 120.10(3), and one count of third-degree criminal possession of a weapon, *see* N.Y. Penal Law § 265.02(1). The convictions were based on Smith's shooting of Denise Yancey and Yancey's boyfriend, Kevin Jackson, in Jackson's apartment on November 3, 2001. At the time of the shooting, Smith rented a room in Yancey's apartment, and suspected Yancey's friend, Letizia Murray, of stealing his computer and certain other belongings from his room. The prosecution's theory was that Smith—incensed about the theft—forced his way into Jackson's apartment with a gun and proceeded to shoot Jackson, and then Yancey, in the head. The prosecution relied principally on the testimony of Yancey and Jackson to that effect, as well as certain forensic evidence. The defense's theory was that Smith came to Jackson's apartment unarmed seeking Murray's contact information, and that it was Jackson who threatened Smith with a gun. The defense relied principally on testimony by Smith, who stated that Jackson forced

Smith into the apartment at gunpoint, and that the two shots fired as Smith attempted to wrest the gun from Jackson's right hand.

Smith did not initially request a justification instruction. But after the preliminary charge to the jury, upon the court's solicitation of "requests and exceptions," Smith's trial counsel informed the court: "Mr. Smith has advised me that he wishes that a justification charge be given to the jury, your Honor." Trial Tr. ("Tr.") 918-19. Even then, though, Smith offered no argument in support of the charge. In response to the prosecution's objection, and after the court solicited further comment, Smith's counsel stated only, "I rely on the sole discretion of the Court, your Honor." Tr. 919. The court denied Smith's request for the instruction. After the jury informed the court that it had reached its verdict, Smith renewed his request, this time offering a case citation. The court again denied Smith's request.

Smith appealed his conviction to the Appellate Division, arguing, *inter alia*, that the trial court's failure to instruct the jury on the defense of justification violated New York law and the Due Process Clause of the United States Constitution. The Appellate Division affirmed the judgment of conviction, but did not discuss the jury instruction challenges in any depth: It stated only that "[t]he defendant's remaining contentions, including those raised in his supplemental pro se brief, are without merit." *People v. Smith*, 782 N.Y.S.2d 366, 366 (App. Div. 2d Dep't 2004). Smith sought, but was denied, leave to appeal to the New York Court of Appeals on the question, *inter alia*, whether the failure to instruct the jury on justification violated his due process rights.

New York law permits a person to "use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person," N.Y. Penal Law § 35.15(1), though "[a] person may not use deadly physical force upon another person . . . unless . . . [t]he actor reasonably believes that such other person is using or about to use deadly physical force" or certain other conditions

3

are met, *id.* § 35.15(2). "Justification is a defense, not an affirmative defense, and therefore the People bear the burden of disproving it beyond a reasonable doubt." *Matter of Y.K.*, 87 N.Y.2d 430, 433 (1996) (citations omitted); *see* N.Y. Penal Law § 35.00. Further, "the defense [may] be raised against diverse charges involving the use of force, regardless of the relevant *mens rea.*" *People v. McManus*, 67 N.Y.2d 541, 547-48 (1986) (explaining that a justification defense may be asserted against a charge of depraved indifference murder). "[A] charge on justification is warranted whenever there is evidence to support it. The court must view the record in a light most favorable to the accused and, if any reasonable view of the evidence would permit the fact finder to decide that the conduct of the accused was justified, an instruction on the defense should be given." *Id.* at 549 (citations omitted). Where only an "artificial or irrational" view of the evidence would permit a jury to conclude that the defendant was justified, however, the justification instruction is not appropriate. *People v. Butts*, 72 N.Y.2d 746, 750 (1988).

Of course, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus where, as here, "an error in a jury instruction is alleged, 'it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). The relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147.

When a state court has addressed the merits of the federal claim, the federal court's review is further constrained by the standard set out in 28 U.S.C. § 2254(d).[1] Here, we

---

[1] "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). Smith has not rebutted the presumption here.

cannot grant Smith relief "unless the adjudication of the claim . . . resulted in a decision that . . . involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). To prevail, Smith "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

In adjudicating a habeas petition based on a New York court's failure to provide a justification instruction, we thus typically ask three questions: "First, was the justification charge required as a matter of New York state law? Second, if so, did the failure to give the requested charge violate the standard set out in *Cupp*[?] Third, if so, was the state court's failure of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254?" *Davis*, 270 F.3d at 124.

The District Court held that habeas relief was not warranted because, under New York law, no justification charge was required. In the District Court's view, to credit Smith's testimony that the shots were fired in a struggle for the gun would have been to take an irrational view of the evidence, *see Butts*, 72 N.Y.2d at 750. The court focused principally on what it considered "objective and unassailable" forensic evidence, Special App. 14, contradicting testimony by Smith that the gun fired while Smith was grasping for the gun with his left hand, and that the gun fired at Jackson from "[l]ess than arm's length" away, Tr. 715. The court also reasoned that it would be irrational to believe that the only two bullets fired hit Jackson and Yancey in the head by chance.

We disagree with the District Court that, under New York law, the justification instruction was not warranted. Smith's testimony, if believed, would have permitted a reasonable jury to conclude that Smith was justified in attacking Jackson, *see McManus*, 67 N.Y.2d at 547-48, and we cannot say that no reasonable jury could have credited that

5

testimony. The forensic evidence—construed in the light most favorable to Smith—did not in fact "objective[ly] and unassailabl[y]" undermine Smith's testimony. While the forensic expert testified that the pattern of gunshot residue on Smith's hands suggested that Smith had fired the gun from his right—and not left—hand, the expert also testified that gunshot residue "particles do not stick well, particularly to skin, and actions such as rubbing the hand can remove the particles or transfer them from one hand to the other," Tr. 562-63. Similarly, Smith's testimony that the gun fired at Jackson from "[l]ess than arm's length" away was not necessarily inconsistent with forensic evidence that the gun fired from a distance of 24 inches or more. As for Smith's testimony that the gun discharged accidentally, we disagree that the possibility of the bullets striking Jackson and Yancey in the head by chance was so remote that Smith's testimony was incredible as a matter of law. Therefore, even assuming *arguendo* that New York law permits the prosecution's evidence to render the defense argument of justification so implausible as to negate the need for the instruction, that would not be so in this case.

But we cannot say that the Appellate Division unreasonably applied *Cupp* when it concluded, ultimately, that the failure to provide the instruction did not "by itself so infect[] the entire trial that the resulting conviction violates due process." Because the *Cupp* standard is a general one, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Given the nature of Smith's testimony and the existence of potentially contradictory forensic evidence, the Appellate Division reasonably could have concluded that Smith's account— even if potentially credible—was sufficiently implausible that Smith's due process rights were not violated as a result of the failure to provide the justification charge. *See Henderson v. Kibbe*, 431 U.S. 145, 157 (1977) (denying habeas relief when the possibility "that the jury might have reached a different verdict pursuant to an additional instruction" was "too speculative to justify the conclusion that constitutional error was committed"); *cf. Davis*, 270 F.3d at 131, 133 (granting habeas relief when "there [wa]s a substantial likelihood that a properly instructed jury would have found in [petitioner's] favor"); *Jackson v. Edwards*, 404

6

F.3d 612, 627-28 (2d Cir. 2005) (granting habeas relief when a properly instructed jury "might well have" found in petitioner's favor).

Further, Smith requested a justification instruction only after the initial jury charge, and did not offer any argument in support of his request until after the jury had reached its verdict. A party may request an instruction "after the court's charge" as a matter of New York law. N.Y. Crim. Proc. Law § 300.10(5). But the Appellate Division reasonably could have concluded, in light of Smith's delay and the nature of the requests, that as a matter of federal law the resulting conviction did not violate due process. *See Kibbe*, 431 U.S. at 154 ("Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error."). Because the Appellate Division did not unreasonably apply any clearly established Supreme Court law, the District Court did not err in denying Smith's habeas petition.

* * *

We have considered Smith's remaining arguments, including those in Smith's supplemental *pro se* reply brief, and find them to be without merit. We AFFIRM the judgment of the District Court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7